UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
TAMMY L. BASS,

                          Plaintiff,                **OPINION & ORDER**

                                                    16 Civ. 6721 (JCM)

        -against-

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

                        Defendant.
--------------------------------------------------------x

Plaintiff Tammy L. Bass ("Plaintiff") commenced this action pursuant to 42 U.S.C. §

405(g), challenging the decision of the Commissioner of Social Security ("Commissioner"),

which denied Plaintiff's application for disability insurance benefits and found her not disabled.

(Docket No. 1).  Thereafter, Plaintiff moved for judgment on the pleadings, (Docket No. 9), and

the Commissioner cross-moved for judgment on the pleadings, (Docket No. 17).  On October 5,

2017, the Court granted Plaintiff's motion, denied the Commissioner's motion, and ordered that

the case be remanded for further administrative proceedings.[2] (Docket No. 19).  The Clerk of the

Court entered judgment on October 10, 2017. (Docket No. 20).  On December 15, 2017, the

parties stipulated that Plaintiff was entitled to an award of $4,600.00 in attorney's fees pursuant

to the Equal Justice Act ("EAJA"), 28 U.S.C. § 2412, and $400.00 in court costs from the

Judgment Fund pursuant to 28 U.S.C. § 1920. (Docket No. 21).  Because this award was partially

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin as the Defendant in this action, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 16).

offset by Plaintiff's federal debt, counsel ultimately received $3,088.54 under the EAJA. (*See* Docket No. 23 ¶ 5).

Before the Court is Plaintiff's application for attorney's fees for work performed by her counsel, the Law Offices of Charles E. Binder and Harry J. Binder, LLP (the "Binder Firm"), under 42 U.S.C. § 406(b) ("§ 406(b)"). (Docket Nos. 22-24).  The Commissioner does not object to the application, but requests that the Court determine the timeliness of the application as well as the reasonableness of the fees requested in its discretion. (Docket No. 26).  For the reasons that follow, Plaintiff's application for attorney's fees is granted.

## I.    BACKGROUND

Plaintiff applied for Supplemental Security Income benefits on June 30, 2011. (Docket No. 23 ¶ 1).  Her claim was denied, and after two hearings as well as a remand by the Appeals Council, ALJ Michael Friedman ("ALJ Friedman") issued a decision finding her not disabled on September 3, 2014. (*Id.* ¶¶ 1-2).  The Appeals Council denied review of that decision on April 25, 2016. (*Id.* ¶ 2).  On August 20, 2016, Plaintiff retained the Binder Firm to appeal the Commissioner's denial of benefits to this Court. (*Id.* ¶ 3; *see also* Docket No. 23-1 at 2).  The retainer agreement ("Retainer Agreement") provides that "[i]f the case is remanded by the United States District Court to the Social Security Administration" ("SSA") and Plaintiff is ultimately "awarded past due benefits," Plaintiff will pay the Binder Firm 25% of the past due benefits. (Docket No. 23-1 at 2).

Following Plaintiff's successful appeal and remand to the SSA, on February 27, 2019, ALJ Lori Romeo issued a decision finding Plaintiff disabled. (Docket No. 23 ¶ 6).  On March 27, 2019, the SSA issued a Notice of Award ("Award") indicating that Plaintiff's past due benefits amount to $50,577.00. (Docket No. 23-1 at 9).  However, the Binder Firm did not receive a copy

of the Award until October 7, 2021, after "trying to obtain" it from the SSA via "phone calls and letters . . . for many years." (Docket No. 24 at 6; *see also* Docket No. 23 ¶ 14).  On October 19, 2021, counsel filed the instant motion requesting $12,644.25 in fees, which is 25% of the past due benefits Plaintiff received under the Award. (Docket Nos. 22; 23 ¶ 14).

## II.   DISCUSSION

Plaintiff argues that (1) her application was filed timely because her counsel submitted it less than fourteen days after receiving the Award; and (2) the fees requested are reasonable in light of counsel's effective advocacy and efficiency. (Docket No. 24).  The Binder Firm also affirms that should the Court approve the requested award, it will remit the $3,088.54 EAJA fee directly to Plaintiff. (Docket No. 23 ¶ 15).  The Commissioner submits that because the motion was filed over two years after the Award's issuance, it is technically untimely, and the Court must determine whether counsel's delayed receipt of the Award "is sufficient" to extend the deadline under the doctrine of equitable tolling. (Docket No. 26 at 2).  The Commissioner also asks the Court to "determine whether . . . the fee [sic] requested under section 406(b) is [sic] reasonable," and reiterates counsel's obligation to refund Plaintiff the EAJA fees if the Court grants the motion. (*Id.* at 2, 4).  The Court addresses each issue in turn.

## A.  Timeliness

Federal Rule of Civil Procedure 54(d) governs the timeliness of fee applications under § 406(b). *See Sinkler v. Berryhill*, 932 F.3d 83, 86 (2d Cir. 2019).  That rule prescribes a fourteen-day filing period following "the entry of judgment." *See* Fed. R. Civ. P. 54(d)(2)(B).  In *Sinkler v. Berryhill*, however, the Second Circuit held that equitable tolling extends this period to fourteen days after "a party receives notice of a benefits calculation" for social security cases

involving a judgment that reverses the denial of benefits and remands to the SSA.[3] *See* 932 F.3d at 89. The court reasoned that rigid application of Rule 54(d) in such cases would otherwise create an impossible deadline because the Commissioner "typically" takes months to calculate the amount of past-due benefits, and § 406(b) cuts off attorney's fees at 25% of any benefits awarded. *See Sinkler*, 932 F.3d at 87. Thus, "parties who must await the Commissioner's award of benefits on remand cannot be expected to file an application for attorney's fees that are statutorily capped by the amount of an as-yet-unknown benefits award." *Id.* at 88.

The parties dispute whether the filing period's triggering date is the date when counsel— or the plaintiff—receives notice of the benefits award under *Sinkler*. (*Compare* Docket No. 24 at 5, *with* Docket No. 26 at 2). Plaintiff argues that the filing period should begin to run when her counsel was faxed a copy of the Award, because that is the date when counsel was notified of its existence, and counsel diligently "tr[ied] to obtain [it] . . . [from] SSA for many years." (Docket Nos. 23 ¶ 14; 24 at 5-6). Plaintiff reasons that this result comports with *Sinkler*'s approval of the Third Circuit's "tolling [of] the rule's filing deadline 'until the notice of award is issued by the Commissioner' on remand, '*and* counsel is notified of that award.'" *See Sinkler*, 932 F.3d at 87 (citing *Walker v. Astrue*, 593 F.3d 273, 280 (3d Cir. 2010)) (emphasis added); (Docket No. 24 at 5). The Commissioner responds that Plaintiff's motion may be untimely because the *Sinkler* court seemingly endorsed the opposite approach in a single line elsewhere in its decision— holding that "the fourteen-day filing period starts to run when the *claimant* receives notice of the benefits calculation." *See* 932 F.3d at 91 (emphasis added); (Docket No. 26 at 2).

---

[3] The *Sinkler* court also qualified that because the law "presume[es] that a party receives communications three days after mailing," the fee request must be filed a total of seventeen days after issuance of the award. *See* 932 F.3d at 89 n.5.

The Court is persuaded that *Sinkler* supports a flexible reading of this notice requirement allowing tolling of the filing period until counsel's receipt of the Award.  Indeed, district courts within this Circuit have declined to adopt "[the] rigid interpretation of the equitable tolling doctrine" advanced by the Commissioner. *See Almodovar v. Saul*, 16-CV-7419 (GBD)(SN), 2019 WL 7602176, at *2 (S.D.N.Y. Oct. 4, 2019), *report and recommendation adopted*, 2019 WL 6207784 (S.D.N.Y. Nov. 21, 2019); *see, e.g.*, *Bennett v. Comm'r of Soc. Sec.*, CIVIL ACTION NO. 17 Civ. 2067 (SLC), 2021 WL 3537165, at *4 (S.D.N.Y. Aug. 11, 2021) (holding that "the operative information triggering" the filing period is when counsel "knew the amount of attorneys' fees to request"); *BillyJo M. v. Comm'r of Soc. Sec.*, 1:17-CV-00636 EAW, 2021 WL 4893378, at *2 (W.D.N.Y. Oct. 20, 2021) (finding that motion for attorney's fees was "timely, or alternatively, toll[ed]" because it was filed fourteen days after plaintiff's counsel's receipt of the award); *Debra J. S. v. Comm'r of Soc. Sec.*, 5:15-CV-1385 (GTS/DJS), 2020 WL 1180774, at *3 (N.D.N.Y. Mar. 12, 2020) (holding that triggering date was tolled until "counsel received a notice" from the SSA correcting the maximum fee award).  Indeed, the *Sinkler* court expressly stated: "Once *counsel* receives notice of the benefits award—and, therefore, the maximum attorney's fees that may be claimed—there is no sound reason not to apply Rule 54(d)(2)(B)'s fourteen-day limitations period to a § 406(b) filing, just as it would apply to any other final or appealable judgment." 932 F.3d at 88 (emphasis added).  It further explained that this approach comports with the general rule that "[s]tatutes of limitations are . . . subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness." *See id.* (quoting *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011)) (internal quotations omitted).  The Commissioner's reading of *Sinkler* ignores this reasoning, and would unfairly punish counsel

when they were working diligently to obtain the information needed to file the instant motion. *See id.*

Moreover, even if the filing period technically began to run when Plaintiff received the Award, the motion should still be considered timely because "Rule 54['s] . . . fourteen-day limitations period is not absolute." *See id.* at 89.  Rule 54 expressly permits a different filing period where "a statute or court order provides otherwise." *See* Fed. R. Civ. P. 54(d)(2)(B).  As recognized in *Sinkler*, this provision allows district courts to "enlarge th[e] filing period where circumstances warrant," and the Circuit "generally defer[s] to [such courts] . . . in deciding when such an alteration is appropriate." *See* 932 F.3d at 89–90.  Accordingly, "courts in the Second Circuit have accepted as timely Section 406(b) fee applications where the claimant's counsel 'has presented compelling evidence' as to when he or she received the Notice of Award." *Bennett*, 2021 WL 3537165, at *3 (quoting *Perry v. Comm'r of Soc. Sec.*, 1:17-CV-01306-MAT, 2020 WL 360979, at *4 (W.D.N.Y. Jan. 22, 2020)); *see also Almodovar*, 2019 WL 7602176, at *2 (finding motion timely where attorney "state[d], under penalty of perjury, that he did not receive the Notice of Award" until fourteen days before motion was filed, which "[wa]s confirmed by the postmark on the envelope containing the Notice of Award"); *LaFrance v. Saul*, 17-CV-04709 (CM)(SN), 2019 WL 4677041, at *3 (S.D.N.Y. Aug. 26, 2019), *report and recommendation adopted*, 2019 WL 4565074 (S.D.N.Y. Sept. 20, 2019) (approving extension where "[f]or reasons unexplained in the record, the SSA did not send [counsel] the Notice of Award until December 19, 2018, nearly two weeks after [it] was mailed to Plaintiff").

That is the case here.  Although the Award is dated March 27, 2019, the record is clear that the Binder Firm did not receive it until October 7, 2021, when it was sent to the Firm by

fax.[4] (Docket Nos. 23 ¶ 14; 24 at 6).  The Binder Firm asserts that it attempted to access the Award "for many years," to no avail. (Docket No. 24 at 6).  Absent any evidence to the contrary, or that the Firm otherwise caused this delay, the Court accepts these representations.  Because the Binder Firm "could not file a motion for attorney's fees" until it "kn[e]w the amount of past-due benefits" on October 7, 2021, extension of the filing period until fourteen days from that date is warranted. *See Almodovar*, 2019 WL 7602176, at *2; *see also Sinkler*, 932 F.3d at 89–90.

Accordingly, because counsel filed the motion on October 19, 2021—less than fourteen days after receiving the fax, plus the three-day mailing period—it is timely. *See Sinkler*, 932 F.3d at 89–90; *supra* n.3.

## B. Reasonableness

The Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b).  "[W]here there is a contingency fee agreement in a successful social security case, the district court's determination of a reasonable fee under § 406(b) must begin with the agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).  Thus, "§ 406(b) does not displace contingent-fee agreements," but "[r]ather, . . . calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002).

To determine whether a fee is "unreasonable," courts should consider (1) "whether the contingency percentage is within the 25% cap;" (2) "whether there has been fraud or overreaching in making the agreement;" and (3) "whether the requested amount is so large as to

---

[4] Indeed, the fax coversheet attaching the Award is dated October 7, 2021. (Docket No. 23-1 at 6).

be a windfall to the attorney." *Wells*, 907 F.2d at 372; *see also Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).  In *Gisbrecht v. Barnhart*, the Supreme Court also held that reduction of the fee may be "appropriate[]" "based on the character of the representation and the results the representative achieved," or the attorney's role in any delay. *See* 535 U.S. at 808.  Here, the Commissioner concedes that the percentage here is within the 25% statutory cap, and there is no evidence of fraud or overreaching. (Docket No. 26 at 3).  Thus, the Court focuses its analysis on whether the requested amount constitutes a windfall or otherwise must be reduced under *Gisbrecht*. *See* 535 U.S. at 808.

The Second Circuit recently explained in *Fields v. Kijakazi* that the windfall factor considers whether "the benefits are large in comparison to the amount of time counsel spent on the case." 24 F.4th at 853 (quoting *Gisbrecht*, 535 U.S. at 808) (internal quotations omitted).  At the same time, however, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* at 854.  Indeed, the "windfall factor does not constitute a way of reintroducing the lodestar method." *Id.*  Consequently, the Circuit set fourth four additional factors to be assessed when determining whether a particular award constitutes a windfall: (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do;" (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level;" (3) "the satisfaction of the disabled claimant;" and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *See id.* at 854–56.

-8-

Consideration of these factors confirms that the requested fee does not constitute a windfall. *See id.* The Binder Firm expended a total of 24.00 hours of work between three attorneys with several years of experience in social security appeals at the administrative and federal court levels. (Docket Nos. 23 ¶¶ 9, 11, 13; 23-1 at 4). Charles E. Binder ("Mr. Binder"), a frequent lecturer on social security law issues and former officer and member of the Executive Committee of the National Organization of Social Security Claimants' Representatives, spent only 2.70 hours reviewing Plaintiff's file, dictating correspondence and the complaint, and editing the draft brief. (Docket Nos. 23 ¶ 9; 23-1 at 4). Similarly, Daniel S. Jones, a co-author of a notable social security treatise and practitioner with over a decade of experience in all fifty states, spent .40 hours corresponding with the Commissioner and completing an EAJA worksheet. (Docket Nos. 23 ¶ 13; 23-1 at 4). Eddy Pierre Pierre—who spent the remaining hours reviewing the record, drafting and revising the papers, and preparing for filing—practiced with the Binder Firm between December 1996 and December 2017. (Docket Nos. 23 ¶ 11; 23-1 at 4). Just as the Circuit found in *Fields*, the Binder Firm's evident "ability and expertise allowed it to accomplish in just [24.00] hours what other lawyers might reasonably have taken [almost] twice as much time to do." *See* 24 F.4th at 854. Therefore, counsel's resulting $526.84[5] *de facto* hourly rate "must be viewed in this context." *See Fields*, 24 F.4th at 854.

With respect to counsel's relationship with Plaintiff, Plaintiff retained the Binder Firm relatively late in the proceedings, solely for purposes of her appeal in federal court. *See id.* at 855; (Docket No. 23 ¶ 3). As a result, counsel did not have the benefit of being

---

[5] The Commissioner states that the requested fee results in a *de facto* hourly rate of $527.68, but this appears to be an error. (Docket No. 26 at 3).

familiar with the case before drafting the papers.  This required counsel to invest time and effort in understanding the medical evidence and procedural history, including a 712-page administrative record, (Docket No. 8-10), in order to advocate effectively. Although this page length is considered average for a social security record, *see, e.g.*, *William M. v. Kijakazi*, Civil No. 3:17CV1681(AWT), 2022 WL 292406, at *2 (D. Conn. Feb. 1, 2022); *Bluman v. Berryhill*, Case No. 15-CV-627-FPG, 2017 WL 3910435, at *2 (W.D.N.Y. Sept. 7, 2017), and the legal issues were not overly complex, counsel submitted a comprehensive and persuasive memorandum of law comprising of twenty-two pages, (Docket No. 10).  District courts within this Circuit endorse a twenty to forty-hour range as "reasonable" for "a typical Social Security disability appeal in federal court." *See Rivera Hernandez v. Comm'r, Soc. Sec. Admin.*, 19-CV-04025 (PAE)(KHP), 2020 WL 2765866, at *3 (S.D.N.Y. May 28, 2020); *see, e.g.*, *Kirk W. v. Kijakazi*, 18-CV-1049L, 2022 WL 883774, at *2 (W.D.N.Y. Mar. 25, 2022); *Arel v. Colvin*, No. 3:14 CV 1008 (JGM), 2015 WL 4429263, at *2 (D. Conn. July 20, 2015).  Counsel's 24.00 hours of work falls at the lower end of this spectrum, which correlates with the point at which they entered the case and the quality of their representation.

Moreover, given the "excellent result" counsel obtained for Plaintiff, there is nothing in the record to suggest that Plaintiff is dissatisfied with the representation. *See Fields*, 24 F.4th at 855.  Indeed, the SSA awarded Plaintiff over $50,000.00 in past-due benefits for over seven years of disability, after ALJ Friedman twice found plaintiff not disabled and the Appeals Council denied review. (Docket Nos. 23 ¶ 2; 23-1 at 9). Plaintiff has not objected to the requested fees.  These additional facts militate in favor of approving the amount requested. *Cf. Yamile B. S. v. Comm'r of Soc. Sec. Admin.*, Civ. No.

3:19CV00155(SALM), 2022 WL 1115099, at *3 (D. Conn. Apr. 14, 2022) (noting that "[c]ounsel achieved a favorable result . . . by securing a Sentence Four remand to the administrative level," and plaintiff's past-due benefits "likely would not have been" awarded "without Counsel's efforts at the District Court level").

Furthermore, in light of the multiple hearings and negative decisions issued in Plaintiff's case at the agency level, this result was far from certain. *See Fields*, 24 F.4th at 855. As the Circuit explained in *Fields*, because attorneys working on contingency "lose a significant number of their cases[,] . . . receiv[ing] no compensation when they do," "any reasonable fee award must take account of that risk." *See id.* at 855–56 (quoting *Wells*, 907 F.2d at 371) (internal quotation omitted). Because this risk was particularly high here, and counsel's success was evidently "not without effort," the fees requested do not represent the "kind of unearned advantage [that] . . . the windfall concern really is about." *See id.* at 856; *see also Robert J. v. Comm'r of Soc. Sec.*, 1:18-CV-00458 EAW, 2022 WL 1536710, at *2 (W.D.N.Y. May 16, 2022) (finding no windfall because "[g]iven the Commissioner's previous denials of Plaintiff's claims, achieving a favorable determination on Plaintiff's behalf was not assured").

Finally, there is no evidence that counsel unreasonably prolonged this case, or that the requested fee is inappropriate for any other reason. *See Gisbrecht*, 535 U.S. at 808. To the contrary, counsel obtained a favorable result in a reasonable amount of time given the amount of work involved. Whereas the Commissioner notes that some courts have reduced as unreasonable *de facto* hourly rates above $500.00,[6] (Docket No. 26 at 3 &

---

[6] *See, e.g.*, *Mitchell v. Astrue*, 09-CV-83 (NGG) (SMG), 2019 WL 1895060, at *6 (E.D.N.Y. Apr. 29, 2019); *Rivera v. Berryhill*, 13-CV-5060 (PKC), 2018 WL 2436942, at *2 (E.D.N.Y. May 30, 2018); *Heffernan v. Astrue*, 87 F. Supp. 3d 351, 355 (E.D.N.Y. 2015); *Devenish v. Astrue*, 85 F. Supp. 3d 634, 639 (E.D.N.Y. 2015); *Muniz v. Astrue*,

n.2), the cases on which it relies all pre-date *Fields*, which approved a much higher *de facto* hourly rate of $1,556.98 for the same law firm that is before this Court.[7] *See* 24 F.4th at 854–56.  The Commissioner's argument also ignores the Circuit's instruction that "[i]t would be foolish to punish a firm for its efficiency and thereby encourage inefficiency," and that an attorney's *de facto* hourly rate must be evaluated based on the circumstances in each case. *See id.* at 854.  This is especially so in light of the fact that many of the cases on which the Commissioner relies involved attorneys who, unlike the Binder Firm here, spent the majority of their time on administrative tasks, filed boilerplate documents, or pursued unnecessary legal arguments. *See, e.g.*, *Mitchell*, 2019 WL 1895060, at *5; *Heffernan*, 87 F. Supp. 3d at 356–57; *Devenish*, 85 F. Supp. 3d at 638; *Muniz*, 2011 WL 5563506, at *6.  Because the proposed fee here is by no means "unearned," and nothing in the record warrants reducing it for any other reason, the Court finds it reasonable. *See Fields*, 24 F.4th at 849; *see also Gisbrecht*, 535 U.S. at 808.

Accordingly, the claimed fee of $12,644.25 is reasonable.

## C.  EAJA

"Under [the] EAJA, a party prevailing against the United States in court, including a successful Social Security benefits claimant, may be awarded fees payable by the United States if the Government's position in the litigation was not 'substantially

---

No. 09-CV-3954 (ARR), 2011 WL 5563506, at *6 (E.D.N.Y. Nov. 15, 2011); *Benton v. Comm'r of Soc. Sec.*, No. 03 CV 3154 (ARR), 2007 WL 2027320, at *3 (E.D.N.Y. May 17, 2007).

[7] Moreover, such a rate is not an outlier.  Courts within this Circuit routinely award attorney's fees resulting in a *de facto* hourly rate of over $1,000.00 for efficient and effective advocacy. *See, e.g., Valle v. Colvin,* 13-CV-2876 (JPO), 2019 WL 2118841, *3 (S.D.N.Y. May 15, 2019) (granting the Binder Firm an award resulting in a *de facto* hourly rate of about $1,079.72); *Nieves v. Colvin,* 13 Civ. 1439 (WHP) (GWG), 2017 WL 6596613, at *3 (S.D.N.Y. Dec. 26, 2017), *report and recommendation adopted*, 2018 WL 565720 (S.D.N.Y. Jan. 24, 2018) (granting an award resulting in a *de facto* hourly rate of $1,009.11); *Kazanjian v. Astrue,* No. 09 civ. 3678(BMC), 2011 WL 2847439, at *2–3 (E.D.N.Y. July 15, 2011) (awarding a *de facto* hourly rate of $2,100.00 for 19.75 hours of work).

justified.'" *Gisbrecht*, 535 U.S. at 796 (quoting 28 U.S.C. § 2412(d)(1)(A)).  This provision "effectively increases the portion of past-due benefits the successful Social Security claimant may pocket," and calculates fees "not by a percent of the amount recovered, but by the 'time expended' and the attorney's '[hourly] rate,' . . . capped in the mine run of cases at $125 per hour." *See id.* (quoting 28 U.S.C. § 2412(d)(1)(B), (2)(A)) (alteration in original).  Although awards under both the EAJA and § 406(b) are permissible, "the claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee.'" *See id.* (quoting Act of Aug. 5, 1985, Pub. L. No. 99–80, § 3, 99 Stat. 186) (alteration in original); *see also Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988).

As previously noted, pursuant to a stipulation, the Binder Firm has already received $3,088.54 pursuant to the EAJA for work completed in this case, less Plaintiff's federal debt. (Docket Nos. 21; 23 ¶ 5).  The parties agree that the Binder Firm must return these monies to Plaintiff if the Court approves the requested fees under § 406(b). (Docket Nos. 24 at 6; 26 at 2). Mr. Binder affirms that his firm will do so. (Docket No. 23 ¶ 15).  Because the Court approves the requested fees under § 406(b), and the EAJA fee represents the "smaller" of the two amounts, *see Gisbrecht*, 535 U.S. at 796, the Binder Firm is required to "return the amount of such EAJA award," less Plaintiff's federal debt, "to [P]laintiff out of the payment received under Section 406(b)." *See De Los Santos v. Comm'r of Soc. Sec.*, 18CV2113 (NSR)(LMS), 2020 WL 12654676, at *5 (S.D.N.Y. May 14, 2020), *report and recommendation adopted*, 2021 WL 4507554 (S.D.N.Y. Sept. 30, 2021) (quoting *Jackson v. Astrue*, No. 09-CV-1290 (FB), 2011 WL 1868718, at *2 (E.D.N.Y. May 16, 2011)) (internal quotations omitted); *see also Bah v. Comm'r of Soc. Sec.*, 19-CV-3510 (LJL) (RWL), 2022 WL 784748, at *1 (S.D.N.Y. Mar. 15, 2022).

Accordingly, the Binder Firm must remit $3,088.54 to Plaintiff upon receipt of its fees under § 406(b).

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted.  The Binder Firm is entitled to $12,644.25 in attorney's fees under § 406(b).  Upon receipt of such fees, the Binder Firm is directed to return the $3,088.54 in EAJA fees currently in its possession to Plaintiff.

Dated:    May 18, 2022
          White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge

-14-